# Kilgore *versus* Magee *et al.*

# The Central Board of Education of Pittsburgh *versus* Phelps.

1. The legislature has the power to classify cities according to the number of their population, and the fact that some of these classes contain each but one city does not make such classification invalid or bring it within the constitutional prohibition of sect. 7, art. 3 of the constitution, which forbids local and special legislation.

2. Wheeler *et al. v.* Philadelphia *et al.*, 27 P. F. Smith 338, followed.

3. Merely official positions, unprotected by any special constitutional provisions, are subject to the exercise of the power of revision and repeal by the legislature.

4. An alleged disregard of the forms of legislation required by the constitution in the passage of a law is not the subject of judicial inquiry. So far as the duty and conscience of the members of the legislature is involved, the law is mandatory. They are bound by their oaths to obey the constitutional mode of proceeding, and any intentional disregard is a breach of duty and a violation of their oaths. But when a law has been passed and approved and certified in due form the courts cannot go behind the law as duly certified, to inquire into the observance of form in its passage.

4 NORRIS—26

November 8th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.

Appeals from the Court of Common Pleas, No. 2, of *Allegheny county :* Of. October and November Term 1877, Nos. 253 and 254.

These were appeals by Samuel Kilgore and the Central Board of Education of the city of Pittsburgh from decrees of the court sustaining demurrers to bills in equity, filed by the respective complainants.

The bill of Kilgore, a citizen and tax-payer, and the treasurer elect of the city of Pittsburgh, was filed on the 4th of May 1877, against C. L. Magee, treasurer, R. M. Snodgrass, controller, and the members of the finance committee of councils of said city, setting forth and alleging, inter alia, that said C. L. Magee, city treasurer, claimed the right to appoint, and was about to appoint, some person (then unknown to complainant) as " collector of outstanding or delinquent taxes and water-rents," under and by authority of a pretended Act of Assembly, entitled " An Act in relation to cities of the second class, providing for the levy, collection and disbursement of taxes and water-rents," which purported to have been approved by the governor on March 22d 1877, Pamph. L. 16 ; that said pretended act was inoperative, unconstitutional and void, and did not legally confer said right or authority upon said Magee, city treasurer, because,

1. It was not passed or enacted conformably to the requirements of the constitution of the Commonwealth.   2. It contains more than one subject not clearly expressed in its title.   3. It was altered and amended on its passage through both houses of the General Assembly, so as to entirely change its original purpose.   4. It was not read at length on three different days in each or either house of the General Assembly.   5. It is a local or special law, only applicable to and intended to operate upon and regulate the affairs of the city of Pittsburgh, under a pretended classification made by the said General Assembly, by which said city is alone created a city of the second class, contrary to art. 3 of the constitution.

That at the last session of the General Assembly a bill was introduced in the senate entitled " An Act prescribing the times for the payment of city taxes in cities of the second class," and designated " Senate Bill No. 102," which contained but one section.

Amendments or alterations of said bill were proposed or made by the House of Representatives, but disagreed to by the Senate, and a committee of conference was created, to whom was referred " the difference existing between the two houses in relation to the Senate bill No. 102" aforesaid ; that said committee of conference did not sit or consider the subject-matter referred to it ; that members of said committee acting collusively with certain individuals whose names are unknown to your orator, and with intent to violate the constitution of this Commonwealth, and unduly procure the

passage of the bill or act mentioned in the third and fourth paragraphs of this bill, wrongfully returned to the said General Assembly a report setting forth that the committee had "agreed to recommend the adoption of a bill containing sixteen sections, with an entirely different title, and embracing divers matters and subjects not clearly expressed in its title, and not embraced within the provisions or subject of said Senate bill No. 102, nor pertinent to the matter referred to said committee ; that the same was not read at length, as required by sect. 4 of art. 3 of the constitution, nor duly passed by both or either of the houses of the General Assembly, and is not, nor of right ought to be regarded, respected or enforced as a local or general law of this Commonwealth ; that said act is local and special, being only applicable to and intended to be enforced in the city of Pittsburgh, and was illegally passed in disregard and violation of sects. 7 and 8 of art. 3 of the constitution.

That in passing said act "Senate Bill No. 102" was so altered and amended on its passage as to entirely change its title and body and purpose, and the said pretended act, with an entirely different title, and containing thirteen sections, not one of which is of the same import, meaning or effect as the original bill, but entirely different and for other purposes, was substituted, contrary to art. 3 of the constitution ; that this said act was thus passed for the purpose of increasing the emoluments of C. L. Magee, city treasurer, and indirectly extending his term of office indefinitely, in that it provides he "shall, previous to the 1st day of August 1877, appoint a person, to be denominated collector of outstanding or delinquent taxes and water-rents," who shall hold his office for a term of five years, and "until his successor shall be duly appointed and qualified." That said act is unconstitutional and void because it diminishes the rights and emoluments of plaintiff, city treasurer elect of the city of Pittsburgh, after his election to said office, by depriving him of the right to collect said taxes and water-rents and of the compensation therefor, contrary to sect. 13 of art. 3 of the constitution, and imposing upon him onerous duties without compensation.

The bill then prayed that the said Act of Assembly be declared unconstitutional and void ; that Magee, the treasurer, be restrained and enjoined from appointing the collector provided for in said act, or doing any other matter or thing authorized thereby, and that the controller, finance committee, and said collector, if appointed, be likewise enjoined from performing any duty in pursuance of said pretended law or appointment. The act in question made the following, among other provisions :

Sect. 2. The finance committee of the councils of the cities of the class aforesaid shall be, and are hereby directed, in lieu of any existing authority in relation thereto, to make and agree upon an estimate of the various sums of money which, in their discretion,

[Kilgore *v.* Magee.]

will be required to defray all the various expenses necessary for conducting the various departments, whether legislative, executive or administrative (including schools, or boards of education, or poor boards), of the city government, which estimate shall be founded upon reports obtained from said departments; and also for paying the interest upon the city debt and the principal of such debt falling due; which amounts, when so established by said committee, shall be certified by them on or before the second Monday of January in each year, in detail, to the city councils, to be by them accepted or modified as the aggregate expenses of the city; and said councils are hereby empowered and directed annually to cause a tax sufficient for all purposes to be levied and collected of the estates, real and personal, subject to taxation within such cities.

Sect. 3. The educational, school and poor departments shall be departments of the city government, and the amount set apart for educational, school and poor purposes shall be sacred to such purpose, and shall be paid out by the city treasurer only upon warrants drawn by the mayor and countersigned by the city controller. The educational, school and poor funds shall not be divested; warrants on said fund shall only be drawn upon requisitions being filed with the city controller by the proper educational, school or poor boards.

Sect. 7. That the city treasurer, in cities of the class aforesaid, shall, previous to the 1st day of August 1877, appoint a person to be denominated collector of outstanding or delinquent taxes and water-rents; the person so appointed shall hold his office for the term of five years from the date of appointment, and until his successor shall be duly appointed and qualified. Such collector shall give bonds, to be approved by the finance committee of the city councils, in the sum of $100,000, conditioned for the faithful performance of the duties of his office.

Sect. 8. All taxes and water-rents unpaid at the end of the month in which, by the terms of this act, the same are payable, shall be deemed delinquent, and it shall be the duty of the city treasurer to prepare a registry or list of all taxes unpaid of the first instalment of taxes hereinbefore provided, and place the same in the hands of such collector for collection, on or before the 15th day of April in each year. It shall be the duty of the city treasurer to prepare a registry or list of all delinquents in business tax and water-rents, and place the same in the hands of such collector for collection, on or before the 15th day of July in each year. It shall be the duty of the city treasurer to prepare a registry or list of all taxes unpaid of the last instalment of taxes hereinbefore provided, and place the same in the hands of such collector for collection, on or before the 15th of October in each year. For the year 1877 a list of all taxes and water-rents unpaid on the first day of August in said year, shall be prepared by the city treasurer and placed in the hands of such collector for collection. The com-

[Kilgore v. Magee.]

pensation of such collector shall be ten per centum on the amount collected and paid into the city treasury, which said ten per centum shall be added to said delinquent taxes and water-rents as penalty for non-payment at the time herein prescribed; *Provided*, That out of said penalty shall be paid all cost of office rent, clerk hire and stationery.

Sect. 9. Upon the list aforesaid being furnished to such collector, he shall immediately thereafter proceed to collect all such delinquent taxes and water-rents, either out of the personal or real estate of such delinquent owner, wherever the same may be found, and for such purpose he shall be and is hereby invested with full authority to levy on and sell the personal property after the taxes or water-rents have become delinquent thirty days ; and the real estate of any owner where the taxes or water-rents remain unpaid for six months, may be sold by direction of such collector. * * * *And, provided*, That in all cases of sale for taxes or water-rents, the city controller is hereby authorized and directed to bid on the property a sum sufficient to pay the city's lien for all taxes and water-rents due and unpaid under this act; and, in case of purchase, the property shall be subject to redemption, and, in all such cases, neither the collector or the city shall be liable for the payment of the sheriff's or prothonotary's costs until the claim of the city and the said costs shall be realized out of the real estate so bought in and held for the use of the city. In all cases of sale, the collector filing the lien shall be entitled to the compensation authorized by this act.

Sect. 10. The said collector shall make returns, in duplicate, on or before the twentieth day of every month of his collections, under oath, to the city controller, and shall deposit one copy of said returns with the said city controller, and shall deposit one copy of said returns with the city treasurer, and the said collector shall, at the time of making his return, pay the amount of his collections to the city treasurer, and take duplicate receipts therefor, and shall deposit with the city controller one copy of such receipt.

The defendants jointly demurred to the bill, assigning among other causes therefor, that the proceedings of the Senate and House of Representatives could not be inquired into and adjudicated upon by the court, and that the bill did not contain any matter of equity whereon the court could ground any decree, or give the complainant any relief.

On the 1st of August 1877, Magee appointed Thomas H. Phelps the collector of delinquent taxes, as provided by the act, who thereupon entered upon the duties of his office.

The Central Board of Education of the city of Pittsburgh, on the 21st of September 1877, filed a bill in equity against said Phelps. This board was incorporated by virtue of an Act of Assembly, entitled "An Act consolidating the wards of the city of Pittsburgh for educational purposes," approved the 9th day of February 1855, Pamph. L. 10, &c., and was continued in existence and clothed

[Kilgore *v.* Magee.]

with additional powers, by an act with the same title, approved February 12th 1869, Pamph. L. 150, &c., under which acts, with a few immaterial modifications, it has continued to control the schools of the city until the present time.

By the provisions of the Act of 1855, the city of Pittsburgh was created an independent school district, and had complete control of the schools of the city; with duty and power of maintaining a high school, and school of color, and to pay the teachers of the sub-districts. For these purposes they were required to levy a tax, to appoint a treasurer, and to "appoint some suitable and competent person as collector of the school duplicate of each ward;" and all moneys collected were to be paid to the treasurer of the board, and disbursed by him, on warrants drawn by direction of the board.

Under this act the Central Board of Education was entirely distinct from, and had no connection with the city government.

The Act of February 12th 1869, contained substantially the same provisions, except that by the twentieth section, it was made the "duty of the treasurer of the city of Pittsburgh for the time being, to receive and collect all school rates and taxes assessed by the central board, to whom he gave bond and accounted monthly. He was also authorized to appoint collectors of delinquent taxes in each ward. In all other respects the taxes were entirely subject to the control of the central board, who, by the twenty-first section, had the sole power to make exonerations.

The bill set forth the powers of the board under the above recited acts and further averred that said Phelps, having been appointed collector of delinquent taxes under the provisions of the Act of March 22d 1877, threatened to demand and receive from the tax-payers the school taxes due to said Central Board of Education; that defendant is not responsible to said board for the money which will be collected by him and the recovery thereof cannot be enforced by law. The bill then alleged that the Act of 1877 was unconstitutional and void, on the same grounds set forth in the bill filed by Kilgore, and for the additional reason that it regulates the affairs of the school districts of the city of Pittsburgh in violation of art. 3, sect. 7, of the constitution, which provides that "the General Assembly shall not pass any local or special law regulating the affairs of cities, counties, * * * or school districts, or regulating the management of public schools, &c.;" and further, that said act amends the charter of the Central Board of Education in violation of the constitution, art. 3, sect. 7, which provides that the General Assembly shall not pass any local or special law "creating corporations, or amending, renewing, or extending the charter thereof."

To this bill a demurrer was also filed on the same grounds, and that the decision of the question involved might be reached as soon as practicable, a decree *pro forma* sustaining the demurrers was entered in each case by the court without argument.

[Kilgore *v.* Magee.]

From these decrees these appeals were taken.

*Jeremiah S. Black, Slagle & Wiley, A. M. Brown* and *Thomas M. Marshall,* for appellants.—If the act is put in operation it will diminish the rights and emoluments of Kilgore, who was elected to the office of city treasurer in February 1877, prior to the alleged passage of the act; it will impose an enormous burden upon the tax-payers of the city, to be levied and collected directly for the emolument of the collector appointed, or to be paid to him out of the city treasury in cases where he may fail to collect his royalty; it will also impose general taxation upon property within the city of Pittsburgh for the payment of the separate and local debts of the various sub-school districts of the respective wards of the city; which debts are numerous, large and unequal in amounts, and are, by existing laws, properly payable by said sub-school districts for whose benefit and by whose authority, respectively, they were created; it will deprive the county of Allegheny of costs upon proceedings on city tax liens, and thereby impose onerous burdens upon the treasury of the county; it will cause large expenditures from both the city and county treasuries for the maintenance of the system or scheme created by the act, and it will establish a new and important municipal office, non-elective by the people, and confer upon the incumbent important duties and excessive emoluments, to the injury and oppression of the citizens; and will further give said collector of delinquent taxes authority to collect money which belongs to the Central Board of Education and is necessary for the maintenance of the public schools and the payment of the obligations of the board.

A private citizen may maintain a bill such as that upon which this is founded to test the validity of the law: Sharpless *v.* Mayor, 9 Harris 147; Moers *v.* Reading, Id. 188; Page *v.* Allen, 8 P. F. Smith 338; Kerr *v.* Trego, 11 Wright 292; Mott *v.* Pennsylvania Railroad, 6 Casey 9; Robb *v.* Barlow, 8 P. F. Smith 338; Washington Avenue, 19 Id. 352; Wheeler *v.* Philadelphia, 27 Id. 338; Wells *v.* Bain, 25 Id. 39–56.

If a private citizen can invoke the power of a court of equity to restrain the action of a public officer, or of a public municipal corporation itself, certainly a public corporation can demand its aid to prevent an interference with the performance of the duties for which it was created. In many of the states and in most of the courts of last resort it has been decided that the courts have not only the power but it is their duty to inquire into and determine whether the proceedings of the legislature have been in conformity with the provisions of the constitution, where questions of public or private rights are the subjects of litigation: Cooley Const. Lim.,.3d ed., 78, 139 and 159; Supervisors *v.* Heenan, 2 Min. 330; State *v.* Platt, 2 S. C. N. S. 150; State *v.* Johnson, 26 Ark. 281; Jones *v.* Hutch-

inson, 43 Ala. 722 ; Solomon *v.* Cartersville, 41 Ga. 157 ; People *v.* Allen, 42 N. Y. 378 ; Opinion of Justices, 35 N. H. 579 ; Spangler *v.* Jacoby, 14 Ill. 297 ; Illinois Central Railroad Co. *v.* Wren, 43 Id. 77 ; People *v.* DeWolfe, 62 Id. 253 ; Turley *v.* County of Logan, 17 Id. 151 ; Prescott *v.* I. & M. Canal Co., 19 Id. 324 ; Ryan *v.* Lynch, 68 Id. 160 ; Berry *v.* Railroad Co., 41 Md. 446 ; Gardner *v.* The Collector, 6 Wall. 511 ; Ottawa *v.* Perkins, S. C. of U. S., Pittsburgh, Leg. J. May 23d 1877 ; Steckert *v.* East Saginaw, 22 Mich. 104 ; Oliver *v.* Washington Mills, 11 Allen 268 ; Legg *v.* Mayor of Annapolis, 16 Am. Law Reg. 25.

A valid statute can only be passed in the manner prescribed ·by the constitution, and when the provisions of that instrument, in regard to the manner of enacting laws, are disregarded in respect to a particular act, it will be declared a nullity, though having the forms of authenticity.   And whenever a question arises in a court of law as to the existence of a statute, or as to the time when it took effect, or as to its precise terms, the judges who are called upon to decide such questions, have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question, the best and most satisfactory evidence in all cases being required : Gardner *v.* The Collector, 6·Wall. 499 ; Legg *v.* Mayor, &c., of Annapolis, *supra.*   Parol evidence will be received to show that the legislature exceeded its powers and disregarded constitutional limitations : Jones *v.* Jones, 2 Jones 350 ; Cronise *v.* Cronise, 4 P. F. Smith 262 ; Miles *v.* Stevens, 3 Barr 41 ; Southwark Bank *v.* The Commonwealth, 2 Casey 446 ; DeChastellux *v.* Fairchild, 3 Harris 18 ; Dorsey's Appeal, 22 P. F. Smith 192.

By the Act of May 23d 1874, the cities of the state were divided into three classes : 1. Those containing more than three hundred thousand inhabitants ; 2. Those containing less than three hundred thousand and more than one hundred thousand ; and 3. Those containing less than one hundred thousand and more than ten thousand. In fact, Philadelphia is the only city with a population greater than three hundred thousand, and Pittsburgh the only one with less than three hundred thousand and over one hundred thousand.   To separate these two cities from all others in the state and put them apart, each by itself, and to call that classification, is a curious use of language.   When you separate persons or things, and deal with each by itself, you perform a process the very opposite to classifying, which consists in arranging a number of things together in accordance with some quality or accident which they all have in common. Class is a noun of multitude, and you cannot properly call a city a class of cities, for the same reason that you cannot speak of one ox as a drove, or one wolf as a pack.   When the legislature says classification, it means segregation.   It was intended to individualize these two cities—not to arrange them in classes or put them to-

[Kilgore v. Magee.]

gether with one another. In that same act, and other acts subsequently passed, the phrase "all cities of the first class" signifies precisely the same thing as Philadelphia, and the words "all cities of the second class" furnish a perfect synonym for Pittsburgh. This law, therefore, applies solely and especially to Pittsburgh, and operates upon Pittsburgh as exclusively as if the framers of it had said so without circumlocution. It is not in form a local law for one particular place; it professes on its face to be made for all cities of the second class; but all cities of the second class mean Pittsburgh. It might as well have been described by the words "all cities situated between the rivers Monongahela and Allegheny, at the point of their junction with the Ohio."

But this interpretation, which we think so clear, has been pronounced not sound, but specious, by this court, in Wheeler v. Philadelphia, 27 P. F. Smith 338. The opinion of the court seems to be predicated upon the case of Walker v. Cincinnati, 11 Ohio 14, and no other precedent or authority for the ruling is cited. The case cited is not at all like this, nor could the same question arise in an Ohio court upon an Ohio statute, for that state has not, and never had, any provision in her constitution similar to the one in ours, which is violated by the act under consideration. The question involved is of such importance, affecting, as it does, the interests of great communities who supposed they had the protection of those wise provisions of the constitution providing against special legislation, and to our minds the Act of Assembly is such a manifest attempt to evade the constitution and to pass a local law under the color and false appearance of a general enactment, that we feel justified in asking this court to reconsider their judgment, as given in Wheeler v. Philadelphia, supra, believing that more careful consideration will lead to a different conclusion as to the validity of the Act of 1874, and, consequently, as to the validity of the legislation now in question.

*George P. Hamilton, George Shiras, Jr., M. W. Acheson,* and *D. T. Watson,* for appellees.—We cannot try the constitutionality of a legislative act by the motives and designs of the law-makers, however plainly expressed. If the act itself is within the scope of their authority, it must stand; and we are bound to make it stand, if it will, upon any intendment. It is its effect, not its purpose, which must determine its validity. Nothing but a clear violation of the constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void: Speer v. School Directors, &c., of Borough of Blairsville, 14 Wright 150; Sharpless v. The Mayor, 9 Harris 164; Hilbish et al. v. Catherman, 14 P. F. Smith 154; Pennsylvania Railroad Co. v. Riblet, 16 Id. 164–169.

The legislature, under constitutional limits, is the supreme law-

[Kilgore *v.* Magee.]

maker of the state. Within the constitution it is supreme, and when a law, confessedly within the power of the legislature to make, comes down to the people, authenticated by the presiding officers of the respective houses, approved by the governor, and certified and declared by the secretary of state to be the law of the state, no citizen, we contend, in a private controversy, can call upon the courts to go behind the record thus made up, and impeach the validity of the law, by showing that in its enactment some form or proceeding had not been properly followed or adopted by the legislature, the supreme law-maker: People *v.* Devlin, 6 Tiffany 269; Evans *v.* Browne, 30 Ind. 514; Bender *v.* The State, 53 Id. 254.

The cases in Pennsylvania, cited by appellant, viz: Jones *v.* Jones, Cronise *v.* Cronise, Miles *v.* Stevens, and Bank *v.* Commonwealth, are inapplicable to the question now under discussion. None of them relate to modes or processes of legislation, but exclusively to the power of the legislature under the constitution. The question in all these cases was whether the legislature possessed the power to enact the laws in question, and not whether they had been enacted according to forms and rules of procedure.

The authentication of a law should preclude all inquiries, not merely into the routine of legislation, but also the grounds of it. Are the provisions in the constitution relating to the passage of bills, limitations upon the powers of the legislature? Or are they prescriptions merely as to the mode or manner in which the powers shall be exercised? Our constitution is a limitation and not a grant of powers. The legislature possesses all powers, inherent in legislative bodies, unless expressly prohibited. The prohibition must be so clear as to preclude all doubt. There may be laws directory as well as mandatory, and this is predicable of fundamental as well as of statutory laws: Miller *v.* State, 3 Ohio (N. S.) 483; Pim *v.* Nicholson, 6 Id. 179; People *v.* Supervisors of Chenango, 8 N. Y. 328; McCulloch *v.* The State, 11 Ind. 432; Lehman *v.* McBride, 15 Ohio St. 602; Washington *v.* Page, 4 Cal. 388; Pierpont *v.* Crouch, 10 Id. 316; McPherson *v.* Leonard, 29 Md. 377; Anderson *v.* Baker, 23 Id. 531.

The emoluments or salary of a public officer are not property, and may be increased or diminished by law at all times, except when the constitution has forbidden it. The appellant is not within the protection of the constitution. He is not a public officer, but an officer of a municipal corporation, constituting only an integral part of the public, and a territorial division of the Commonwealth. A public officer is an officer who is appointed by the governor or elected by the people of the state: Commonwealth *v.* Burrell, 7 Barr 34–39; People *v.* Devlin, 33 N. Y. 288; Connor *v.* The Mayor, 1 Seld. 285.

That this law is not local or special legislation is no longer a question since Wheeler *v.* Philadelphia, 27 P. F. Smith 338.

[Kilgore v. Magee.]

The judgment of the Supreme Court was entered, November 19th 1877.

PER CURIAM.—The merits of the Act of 22d of March 1877, "in relation to cities of the second class, providing for the levy, collection and disbursement of taxes and water-rents," are not a subject for our opinion. The only question before us in these cases is, upon the power of the legislature to pass this law. After a thorough argument and a careful consideration, we are unable to pronounce the law unconstitutional. The power to classify cities according to the number of their population was fully discussed and decided in the case of Wheeler v. Philadelphia, 27 P. F. Smith 338. We adhere to that decision, and indeed cannot see how the question of power could have been decided differently. To say that no general law can be passed to regulate a certain subject because some of the classes contained in the regulation do not yet exist, or exist only in a limited number, is to hold that no law can be passed to provide for future wants or necessities. The welfare of the state and one of the chief purposes of legislation would be struck down by such a decision. If the classification had been different and the number of the population to constitute a city of the first class, had been fixed at one million, would the classification be void because no city had yet reached that number? The absurdity of such a proposition is manifest, and it is simply to say that no law can provide for a state of affairs to which the subject is rapidly approaching, but which it has not yet reached. If the power to classify and regulate the subjects of cities generally be admitted, and clearly it cannot be successfully denied, the question of local legislation is at an end; for though it may happen that but one city may fall within the class, non constat that others will not shortly do so and therefore may be provided for. The law was not passed for Pittsburgh as the only city happening within the second class, but for all cities having the population to bring them within that class. If I agree to sell all my lands at a certain rate according to a classification of tracts I have adopted, and only one tract falls within the rate of a given class, will any one be guilty of the absurdity of saying that it is not governed by my classification. The motives of those who passed the law are not involved. Suppose they did perceive that Philadelphia was the only city falling within the first class, and Pittsburgh the only one in the second, yet the motive influencing that classification cannot be inquired into. If the power to classify for wise purposes exists, that ends the matter.

This act concerns a municipality—a division of the state for governmental purposes, and falls within the power of repeal and revision. Those who occupy merely official positions, unprotected by any special constitutional provisions, cannot set themselves up against the exercise of this governmental power. We know of no constitutional right of Mr. Kilgore or of the Central Board infringed by this law. They fill the place of public servants merely.

[Kilgore *v.* Magee.]

In regard to the passage of the law and the alleged disregard of the forms of legislation required by the constitution, we think the subject is not within the pale of judicial inquiry. So far as the duty and the consciences of the members of the legislature are involved the law is mandatory. They are bound by their oaths to obey the constitutional mode of proceeding, and any intentional disregard is a breach of duty and a violation of their oaths. But when a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage. The presumption applies to the act of passing the law, that applies generally to the proceedings of anybody whose sole duty is to deal with the subject. The presumption in favor of regularity is essential to the peace and order of the state.

If every law could be contested in the courts on the ground of informality in its enactment, the floodgate of litigation would be opened so widely, society would be deluged in the flow. It is not a question of fraud in which that is set up as a law which never was so in form or in fact, but a question of regularity in the conduct of those who have the power to enact the law, and who declare it to be such. The evidence of a law—its actual existence—we may inquire into; for before we are bound by it, we must be satisfied it is the act of the legislature, however informally they may have conducted the process by which they have made it a law.

> Upon the whole case, we discover no substantial error, and the decree in each case sustaining the demurrer is affirmed, with costs of the appeal to be paid by the appellants in each case, and the appeals respectively are dismissed.