The **PENNSYLVANIA SCHOOL BOARDS ASSOCIATION, INC.; The Philadelphia School District; and David Hornbeck, Superintendent of the Philadelphia School District, Petitioners,**

v.

**COMMONWEALTH ASSOCIATION OF SCHOOL ADMINISTRATORS, TEAMSTERS LOCAL 502; Thomas Ridge, Governor of the Commonwealth of Pennsylvania; Eugene Hickok, Secretary of Education of the Commonwealth of Pennsylvania; and the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 11, 1997.
Decided July 2, 1997.

**862**

Michael I. Levin, Huntingdon Valley, for petitioners.

Charles J. Cunningham, Philadelphia, for respondent, CASA.

Gregory E. Dunlap, Harrisburg, for respondents, Thomas Ridge, et al.

Before DOYLE and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

The present case concerns the validity of the Act of July 11, 1996, P.L. 619 (Act 105), which provides, *inter alia*, for collective bargaining and binding interest arbitration with respect to school administrators in cities of the first class.[1] On December 4, 1996, the Pennsylvania School Boards Association, Inc. (PSBA), the Philadelphia School District (District) and David Hornbeck, Superintendent of the District, (collectively, Petitioners) filed a five-count petition for review in the nature of a complaint in equity addressed to this court's original jurisdiction. Counts I, II, IV and V of the petition for review allege that the collective bargaining provisions of Act 105 violate various provisions of the Pennsylvania Constitution. Count III of the petition for review alleges that, because the enactment of Act 105 failed to comply with certain procedures established by the Code for obtaining approval of the state budget, the Governor violated his constitutional duties to faithfully execute the laws and to return any bill of which he does not approve when he signed Act 105 into law.

Petitioners request this court to declare the challenged provisions of Act 105 to be unconstitutional or not applicable to the District and to permanently enjoin the Commonwealth Association of School Administrators, Teamsters Local 502 (CASA), from seeking to enforce the provisions of Act 105 regard-

---

1. The disputed portions of Act 105 ultimately became section 1321 of the Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended*, added by Act of July 11, 1996, P.L. 619, 71 P.S. § 371.

ing collective bargaining and binding interest arbitration for school administrators.[2]

On December 20, 1996, CASA filed preliminary objections to the petition for review and, on January 30, 1997, the Commonwealth of Pennsylvania, Governor Thomas J. Ridge and Secretary of Education Eugene Hickok (collectively, Commonwealth Respondents) also filed preliminary objections to the petition for review. Both sets of preliminary objections are now before the court for disposition.[3]

 The parties in this case have not stipulated to the facts relating to the enactment of Act 105. This court, however, can take judicial notice of the Legislative Journals, as well as the various versions of Senate Bill No. 1251, the bill ultimately enacted as Act 105. *League of Women Voters of Pennsylvania v. Commonwealth,* 683 A.2d 685, 687 n. 3 (Pa.Cmwlth.1996). For purposes of ruling on the preliminary objections now before us, we shall adopt the following relevant facts set forth by the chancellor in his opinion on Petitioners' application for preliminary injunction.

## I. FACTS

1. On October 17, 1995, Senate Bill No. 1251, Printers' Number 1472 was introduced and referred to the Committee on Military and Veterans Affairs. The original version of Senate Bill No. 1251 proposed an amendment to the Administrative Code of 1929 ... and contained provisions relating to the Scotland School for Veterans' Children.

2. Senate Bill No. 1251 was ultimately passed by the General Assembly and signed into law by the Governor on July 11, 1996 as Act 105 of 1996. The bill, as enacted, contained additional provisions, *inter alia,* "... SPECIFICALLY AUTHORIZING COLLECTIVE BARGAINING BETWEEN SCHOOL ADMINISTRATORS IN SCHOOL DISTRICTS OF THE FIRST CLASS AND THEIR PUBLIC EMPLOYERS; PROVIDING FOR ARBITRATION IN ORDER TO SETTLE DISPUTES; REQUIRING COMPLIANCE WITH COLLECTIVE BARGAINING AGREEMENTS AND FINDINGS OF ARBITRATORS;...."

3. Under Act 105, some 900 employees of the Philadelphia School District, including all principals and assistant principals of the Philadelphia Public Schools, are considered school administrators subject to the collective bargaining and arbitration provisions of Act 105.

4. Most of these employees would be considered managerial employees under the Public Employe Relations Act (PERA[4]) and as such would not be subject to the collective bargaining provisions of PERA.

5. By letter dated September 4, 1996, respondent [CASA] notified the School District of its intention to demand collective bargaining.

6. On January 21, 1997, CASA filed an unfair labor practice charge with the Penn-

---

2. Act 105 defines "school administrators" as "all supervisory and administrative employes of a school district below the rank of superintendent, district superintendent, executive director, associate superintendent, assistant superintendent or assistant executive director, but including those persons having the rank of first level supervisor." 71 P.S. § 371(*l*).

3. On January 27, 1997, CASA petitioned the court for an immediate hearing and for appointment of an arbitrator, which request was denied by order of President Judge James Gardner Colins dated February 21, 1997. On April 2, 1997, Petitioners filed an application for both a special and a preliminary injunction. Petitioners' request for a special injunction was denied by order of Judge James R. Kelley dated April 7, 1997. In addition, Petitioners' application for a preliminary injunction was denied by an order

dated April 16, 1997, which was issued by Senior Judge Warren G. Morgan acting as chancellor. *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators, Teamsters Local 502* (No. 1129 Md. 1996, filed April 16, 1997)(single judge opinion by Morgan, J.). On April 28, 1997, Petitioners filed a notice of appeal to the Pennsylvania Supreme Court of this court's April 16 order denying their request for a preliminary injunction. On that same date, Petitioners additionally filed with this court a petition for stay or supersedeas of the court's April 16 order and for an injunction pending appeal. On April 30, 1997, Petitioners' request for supersedeas and an injunction pending appeal was denied by order of Senior Judge Morgan.

4. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101—1101.2301.

sylvania Labor Relations Board (PLRB), alleging that the School District had committed an unfair labor practice by refusing to bargain with CASA. The PLRB, by decision dated February 11, 1997, declined to issue a complaint, concluding that it had no jurisdiction to do so under either Act 105 or PERA.

7. On March 10, 1997, CASA requested the appointment of a board of arbitrators pursuant to Act 105, and, on March 14, 1997, appointed its member of the board. By letter dated March 14, 1997, the School District, while maintaining the unconstitutionality of Act 105, appointed its member to the board of arbitration.

8. Arbitration pursuant to Act 105 is continuing as of [April 16, 1997].

*Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators, Teamsters Local 502* (No. 1129 Md. 1996, filed April 16, 1997)(single judge opinion by Morgan, J.).

First, we will discuss the petition for review filed by Petitioners, followed by a discussion of the preliminary objections to the petition for review filed by CASA and Commonwealth Respondents.

## II. PETITION FOR REVIEW

On December 4, 1996, Petitioners filed their five-count petition for review, which was addressed to this court's original jurisdiction. In Count I of the petition for review, Petitioners allege that Act 105 violates Article 3, Section 14 of the Pennsylvania Constitution, which requires a "thorough and efficient" system of education, because Act 105's collective bargaining provisions hamper cooperation and communication between the highest levels of the District's administration and middle management personnel, and because those provisions constitute an unfunded mandate to engage in collective bargaining and interest arbitration. In Count II of the petition for review, Petitioners make the general allegation that the legislative process employed by the General Assembly in passing Act 105 violated Article 3, Sections 1, 2, 3 and 4 of the Pennsylvania Constitution.[5] In Count II, Petitioners also allege that Act 105 violates Article 3, Section 32 of the Pennsylvania Constitution because Act 105 is a "local" or "special" law regulating labor and the affairs of a school district.[6]

In Count III of the petition for review, Petitioners allege that the enactment of Act 105 allegedly failed to comply with the procedures for obtaining approval of the state budget established by Sections 613 and 619 of the Code, 71 P.S. §§ 233, 239, and, thus, in signing Act 105 into law, the Governor violated Article 4, Sections 2 and 15 of the Penn-

---

5. Article 3, Section 1 of the Pennsylvania Constitution provides as follows:

 No law shall be passed except by bill, and no bill shall be so altered or amended, *on its* passage through either House, as to change its original purpose.

 Article 3, Section 2 of the Pennsylvania Constitution provides as follows:

 No bill shall be considered unless referred to a committee, *printed for use of the members* and returned therefrom.

 Article 3, Section 3 of the Pennsylvania Constitution, commonly referred to as the "single-subject" provision, provides as follows:

 No bill shall be passed containing more than *one subject, which shall be clearly expressed in* its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

 Article 3, Section 4 of the Pennsylvania Constitution provides as follows:

 *Every bill shall be considered on three differ-*ent days in each House. All amendments made thereto shall be printed for the use of the members before the final vote is taken on the

bill and before the final vote is taken, upon written request addressed to the president officer of either House by at least twenty-five per cent *of the members elected to that House, any* bill shall be read at length in the House. No bill shall become a law, unless on its final passage the vote is taken by yeas and nays, the names of the persons voting for and against it are entered on the journal, and a majority of *the members elected to each House is recorded* thereon as voting in its favor.

6. Article 3, Section 32 of the Pennsylvania Constitution provides as follows:

 The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special laws:

 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:
 . . . .
 7. Regulating labor, trade, mining or manufacturing:

sylvania Constitution, which require him to "take care that the laws be faithfully executed" and to return any bill of which he does not approve to the House in which it originated. Petitioners argue that the Governor failed to follow the procedures for budget approval required by Code sections 613 and 619 and, therefore, Act 105 is invalid because "the budgetary impact and budgetary requirements implicated by the collective bargaining and interest arbitration provisions contained in Act 105 were: (a) never referred to or displayed as a line item in any appropriation bill; (b) never displayed or justified as a separate item in any Governor's budget request; (c) never briefed to the Chairmen of the Senate and House Appropriation Committees or the leadership of the General Assembly; and (d) never statistically analyzed by the Governor." [7] (Petition for review at 12–13.)

In Count IV of the petition for review, Petitioners allege that the provisions in Act 105 making interest arbitration awards final and binding violate Article 3, Section 31 of the Pennsylvania Constitution, which prohibits the delegation of certain powers by the General Assembly.[8] Finally, in Count V of

---

**7.** Section 613 of the Code provides, in relevant part, as follows:

As soon as possible after the organization of the General Assembly, but not later than the first full week in February of each year, except in the case where a Governor has been elected for his first term of office and then no later than the first full week in March, the Governor shall submit to the General Assembly copies of agency budget requests and all subsequent revised agency budget requests and a State budget and program and financial plan embracing:

(1) A balanced operating budget for the ensuing fiscal year setting forth in detail:

(i) The amounts recommended by him to be appropriated to the General Assembly, the Judicial Department, the Governor, and the several administrative departments, boards, and commissions of the State Government, and to institutions within the State, and for all public purposes, classified by department or agency and by program.

. . . .

(2) A capital budget for the ensuing fiscal year setting forth capital projects to be financed from the proceeds of obligations of the Commonwealth or of its agencies or from operating funds.

(3) A program and financial plan for not less than the prior fiscal year, the current fiscal year, this budget year and the four succeeding fiscal years, which plan shall include for each such fiscal year:

(i) Actual or estimated operating expenditures classified by department or agency and by program, in reasonable detail, and actual or estimated revenue by major categories from existing and additional sources.

(ii) Clearly stated purposes of each program in terms of desired accomplishments.

(iii) Measures used to determine to what extent such program has achieved its stated purposes.

(iv) Actual or estimated levels of accomplishment for each program and actual or estimated levels of program activities and their associated costs.

(v) Clearly stated purposes for each recommended new or revised program, measures to be used to determine whether each new or revised program has achieved its purpose, estimated levels of additional or new accomplishment of each new or revised program, estimated levels of additional activities for each such program, and their associated costs.

(vi) When the Secretary of the Budget identifies a new or expanded program by criteria used in the budget instructions, the new or expanded program shall be displayed and justified as a separate item in the Governor's budget request. A new program shall not be considered to be enacted by the General Assembly unless it is specifically referred to or displayed as a line item in an appropriation bill.

Section 619 of the Code provides, in relevant part, as follows:

(a) In December of each year, the Governor shall meet with the Majority and Minority Chairmen of the Appropriations Committees and the officers of the General Assembly to brief the legislative leadership on the issues he can foresee as being imminent in the budget for the next fiscal year and exchange views with them on issues on the budget before it is formally submitted to the General Assembly. The Governor's briefing shall include:

. . . .

(2) The results or anticipated results of employee union negotiations for salaries, wages and other benefits.

(3) The statistics involved in preliminary forecasts of the major programs mandated by statute such as education subsidies, all public assistance programs, debt service and forecasts of revenue.

**8.** Article 3, Section 31 of the Pennsylvania Constitution provides as follows:

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform

the petition for review, Petitioners allege that Act 105 violates their due process rights by failing to provide sufficient notice as to the scope of the Act's collective bargaining provisions and as to the intent of the Legislature to repeal in part portions of PERA, which specifically denies collective bargaining rights to management level employees. *See* Sections 301(2) and 401 of PERA, 43 P.S. §§ 1101.301(2), 1101.401.

## III. PRELIMINARY OBJECTIONS OF CASA AND COMMONWEALTH RESPONDENTS

In its preliminary objections, CASA asserts that this court lacks subject matter jurisdiction over this original jurisdiction action because the Commonwealth Respondents are not indispensable parties to the action. CASA maintains that the actual controversy in this action is between the District and its school administrators who are represented by CASA, and the remedy sought does not require the Commonwealth Respondents to be named as parties. Therefore, CASA asks this court to dismiss the action and direct the District to file the action in the Court of Common Pleas of Philadelphia County. CASA additionally asserts that the petition for review fails to conform to law, arguing that PSBA lacks standing to sue because PSBA's stated purpose, providing assistance to local school districts and representation of the general public interest in the field of public education, is too remote an interest for purposes of standing. Therefore, CASA asks the court to dismiss PSBA as a party to this action.

Commonwealth Respondents' preliminary objections ask this court to dismiss Count III of the petition for review with prejudice, arguing that the issue of whether the Governor violated the budget procedures established by the Code is not justiciable under the Enrolled Bill Doctrine, the Political Question Doctrine and the doctrine of separation of powers. Moreover, Commonwealth Respondents assert that, even if the issue is reviewable by this court, the budgetary procedures of the Code upon which PSBA relies do not apply to the disputed provisions of Act 105, and a violation of those procedures would not empower a court to invalidate legislation enacted by the General Assembly and approved by the Governor, as PSBA requests. In addition, Commonwealth Respondents maintain that the Commonwealth of Pennsylvania, as the sovereign, is absolutely immune from suit. Finally, like CASA, Commonwealth Respondents assert that this court lacks subject matter jurisdiction over all counts in the petition for review other than Count III because the Commonwealth Respondents are not indispensable parties to those counts. The Commonwealth Respondents therefore ask this court to dismiss all counts against the Commonwealth Respondents and to transfer the remainder of the case against CASA, Counts I,II, IV and V, to the Court of Common Pleas of Philadelphia County.

First, we will address the issue of whether this court has subject matter jurisdiction over this matter.

## A. SUBJECT MATTER JURISDICTION

Petitioners assert that this court has original jurisdiction over the present action pursuant to Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), which provides that the Commonwealth Court shall have original jurisdiction of all civil actions or proceedings "(1) [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity," with certain enumerated exceptions that are not relevant to the present action. For this section to

any municipal function whatever. Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall

constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.

apply, however, the Commonwealth must be an indispensable party to the action. *Annenberg v. Commonwealth,* 686 A.2d 1380, 1384 (Pa.Cmwlth.1996). Generally, an indispensable party is one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing upon those rights. *Id.* Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a), further explains the concept of an indispensable party by providing that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." The mere naming, however, of the Commonwealth or its officers in an action does not conclusively establish this court's jurisdiction, and the joinder of such parties when they are only tangentially involved is improper. *See Pennsylvania State Education Association v. Department of Education,* 101 Pa.Cmwlth. 497, 516 A.2d 1308, 1310 (1986).

We will evaluate the alleged indispensability of the Commonwealth, the Secretary of Education and the Governor seriatim.

■ Petitioners assert that the Commonwealth is an indispensable party here because it has an interest in the relief sought, i.e., a declaration that Act 105 is unconstitutional, in that, through its Legislature, it "drafted, discussed, and voted upon Act 105" and it would be required, if so inclined, to redraft the statute in a constitutional manner upon the issuance of such a declaration. (Petitioners' Brief in Opposition to Preliminary Objections of CASA at 10.) Commonwealth Respondents disagree. They assert that Petitioners' argument would make the Commonwealth an indispensable party to every action challenging the constitutionality of a statute, a result contrary to the provisions of Pa. R.C.P. No. 235, which requires notification of the Attorney General when a constitu-

tional challenge to a statute is raised, but does not require the naming of the Attorney General or the Commonwealth as a party to the action. We agree.

■ The mere fact that a challenged statute may be declared unconstitutional does not, of itself, make the Commonwealth an indispensable party. Here, the relief sought can be fully granted without infringing upon any rights of the Legislature, and, although the Legislature itself may choose to do so, there is no requirement that the Legislature take any action to redraft the statute. Moreover, we have previously stated that, even where the Legislature would be required to take affirmative actions to remedy an unconstitutional statute, such as one imposing a discriminatory tax, such a requirement "has no relation to the proceeding in which the constitutionality is determined." *Annenberg,* 686 A.2d at 1384. Thus, the mere fact that the Legislature, as it does with all acts, drafted and voted upon Act 105 does not make the Commonwealth an indispensable party to this action.[9]

■ Petitioners argue that the Secretary of Education is an indispensable party because "[t]his suit concerns the key issue of collective bargaining with regard to one of the Commonwealth's school districts over which he oversees[,]" and the declaration sought "in the future could have consequences for the other school districts in the Commonwealth." (Petitioners' Brief in Opposition to Preliminary Objections of the Commonwealth Respondents at 31.) Such an interest, which is speculative at best, simply is too remote to make the Secretary of Education an indispensable party to this action.

The Secretary of Education has no power or duty to enforce, implement or administer Act 105, the disputed provisions of which affect only the District and its administrators. While Act 105 does require school

---

9. Petitioners additionally argue that the Commonwealth is an indispensable party because Petitioners' request for "further relief as may be appropriate" in Count I of their petition for review "could include an order requiring the Commonwealth to fund the collective bargaining mandate fully." (Petitioners' Brief in Opposition to Preliminary Objections of CASA at 25.) Because of the constitutional separation of powers,

however, no order which could be fashioned by this court could impair the rights of the General Assembly or the Governor insofar as the appropriation of funds is concerned. *Nason v. Commonwealth,* 90 Pa.Cmwlth. 130, 494 A.2d 499, 501 (1985). Therefore, Petitioners' argument does not alter our conclusion that the Commonwealth is not an indispensable party to this action.

administrators to notify the Secretary of Education when they are involved in binding interest arbitration under the Act, *see* Section 1321(e) and (f) of the Code, 71 P.S. § 371(e), (f), the Act imposes no duty upon the Secretary to act thereon or to enforce any of the provisions of Act 105. Because the Secretary of Education does not claim any interest that would be affected by the declaration sought, and relief can be granted without infringing upon any asserted rights of the Secretary, he is not an indispensable party to the Petitioners' action.

■ Finally, turning to the Governor, we conclude that he is an indispensable party only with respect to Count III of the petition for review. Although meaningful relief could be granted in his absence, the Governor clearly has an interest that would be affected by a declaration that he violated his alleged statutory and constitutional duties by approving Act 105, and that the Act is therefore unconstitutional. Indeed, in their brief, Commonwealth Respondents concede that the Governor is an indispensable party to Count III of the petition for review. (Reply Brief of Commonwealth Respondents to Brief of Petitioners in Opposition to Preliminary Objections at 10.)

However, none of the remaining Counts in the petition for review are directed towards the Governor in any way, and Act 105 does not give the Governor any powers or duties with respect to its enforcement or administration. The mere fact that he gave final approval to Act 105 by signing it into law does not give him any interest that would be affected by the declaration sought with respect to those additional counts, nor does it prevent the granting of the requested relief in his absence. Were we to hold otherwise, the Governor would become an indispensable party to every action challenging the constitutionality of legislation. As such, he is not an indispensable party to any of the Counts in the petition for review other than Count III.

Because none of the Commonwealth Respondents is an indispensable party to

Counts I, II, IV or V of the petition for review, this court lacks original jurisdiction over those Counts under 42 Pa.C.S. § 761(a). Accordingly, we will transfer Counts I, II, IV and V to the Court of Common Pleas of Philadelphia County for further proceedings.[10] With respect to Count III of the petition for review, we address the remaining preliminary objections filed by CASA and Commonwealth Respondents, beginning with CASA's assertion that PSBA should be dismissed from this action for lack of standing.

## B. STANDING

■ CASA argues that PSBA lacks standing to file suit on behalf of the District in this matter because PSBA's stated purpose, which is "the rendering of assistance to local school districts and the representation of the general public interest in the field of public education," (Petition for review at 2), is too remote for standing. CASA therefore objects to the petition for review on the basis that it fails to conform to law under Pa. R.C.P. No. 1028(a)(2) and requests that the court dismiss PSBA as a party to this action.

■ It is well settled that an association, as a representative of its members, may have standing to bring a cause of action even in the absence of injury to itself. *Pennsylvania Gamefowl Breeders Association v. Commonwealth*, 533 A.2d 838, 840 (Pa.Cmwlth. 1987), *reaff'd after reconsideration*, 538 A.2d 645 (Pa.Cmwlth.1988). In order to have standing, the association must allege that at least one of its members is suffering immediate or threatened injury as a result of the challenged action. *Id.* Moreover, the member of that association who is threatened with injury must have an interest in the litigation that is substantial, direct and immediate. *Pennsylvania Academy of Chiropractic Physicians v. Department of State, Bureau of Professional & Occupational Affairs*, 129 Pa. Cmwlth. 12, 564 A.2d 551, 553 (1989). As explained by the Pennsylvania Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 173, 346

10. Although respondents ask us to dismiss these counts, the proper remedy in such instances is to transfer the action to the appropriate forum. *See*

Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a); Pa. R.C.P. No. 213(f).

A.2d 269, 282 (1975), an interest is "substantial" when there is a discernable adverse effect to an interest of the aggrieved individual which differs from the abstract interest of the general citizenry in having others comply with the law. An interest is "direct" when an aggrieved person can show a causal connection between the alleged harm to his or her interest and the matter of which he or she complains. *Id.* Finally, the interest is "immediate" when the causal connection between the injury and the matter complained of is not too remote. *Id.* at 173, 346 A.2d at 283.

Here, PSBA alleges that one of its members, the District, is threatened with injury by Act 105 because the provisions of the Act requiring the District to engage in collective bargaining and binding interest arbitration with its administrators: 1) limit the discretion of the District's school board and superintendent to carry out their duties under the Public School Code of 1949 [11] and the Philadelphia Home Rule Charter, 351 Pa. Code §§ 1.1–100—12.12–503, including the responsibility to operate within specific budgetary restraints; 2) limit cooperation within the higher levels of administration in determining and executing policy by imposing an inherently adversarial bargaining relationship upon the District with respect to all but the highest tiers of the administration; 3) compromise the quality and candor of communication between the highest levels of the District's administration and middle management personnel; and 4) impose significant costs in time and money to prepare for, and engage in, collective bargaining and arbitration. (Petition for review at 8–9.)

Clearly, the interest of the District that is alleged to be adversely affected by Act 105 differs from that of the general population at large. In addition, there is an obvious causal connection between the passage of Act 105 and the alleged harm. Finally, we do not believe that the causal connection between the challenged statute and the alleged harm is *too remote for purposes of standing.* We therefore conclude that the interest of the District, which is allegedly harmed as a result of the collective bargaining and arbitra-

tion requirements imposed by Act 105, is sufficiently substantial, direct and immediate to warrant the conclusion that PSBA, as a representative of the District, has standing in the present matter. The preliminary objection of CASA with respect to standing is accordingly overruled.

## C. DEMURRER

Next, Commonwealth Respondents ask this court to dismiss Count III of the petition for review for failure to state a claim against the Governor, maintaining that the issue of whether the Governor failed to comply with the provisions of the Code pertaining to the preparation of the budget is not justiciable under the Enrolled Bill Doctrine, the Political Question Doctrine and the doctrine of separation of powers. In addition, Commonwealth Respondents argue that the Code provisions upon which PSBA relies apply only to programs involving agencies and institutions that receive direct appropriations from the Commonwealth and do not apply to the collective bargaining and arbitration provisions of Act 105, which affect only the District. Finally, Commonwealth Respondents argue that, even if those Code provisions are judicially reviewable and apply to Act 105, a violation of those provisions would not empower a court to invalidate legislation enacted by the General Assembly and approved by the Governor, as PSBA requests.

In ruling upon preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deducible therefrom; a demurrer should be sustained only in cases where it is clear and free from doubt that the law permits no recovery under the allegations pleaded. *Kee v. Pennsylvania Turnpike Comm'n,* 685 A.2d 1054, 1057 (Pa.Cmwlth.1996).

We first address the Commonwealth Respondents' justiciability argument.

### JUSTICIABILITY
### ENROLLED BILL DOCTRINE

Initially, we point out that acts of the General Assembly are entitled to a

---

**11.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

strong presumption of constitutionality, and the party challenging the constitutionality of an act has a heavy burden of persuasion. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 176, 507 A.2d 323, 331–32 (1986). Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Pennsylvania Constitution, and any doubts are to be resolved in favor of a finding of constitutionality. *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984).

▮▮▮▮ In order to preserve the delicate balance critical to the proper functioning of our tripartite system of government, the Pennsylvania Supreme Court has exercised restraint to avoid intruding upon the prerogatives of a sister branch of government. *Consumer Party,* 510 Pa. at 176–77, 507 A.2d at 332. Pursuant to this principle, our Supreme Court has rejected challenges to the regularity of the procedures by which legislation was passed on the grounds that the matter is non-justiciable under what has come to be known as the Enrolled Bill Doctrine.[12] *Id.* at 177, 507 A.2d at 332. The Pennsylvania Supreme Court's oft-repeated explanation of this doctrine is as follows:

> [W]hen a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of the form in its passage.... The presumption in favor of regularity is essential to the peace and order of the state.

*Kilgore v. Magee,* 85 Pa. 401, 412 (1877).

▮▮▮▮ While the Enrolled Bill Doctrine serves to restrain the judiciary from intruding upon the prerogatives of a co-equal branch of government, the legitimacy of the judiciary's abstention from considering an issue is dependent upon the situation presented. *Consumer Party,* 510 Pa. at 177, 507 A.2d at 333. The countervailing concern is the mandate of the judiciary to insure that all branches of the government function within the bounds of constitutional prescription. *Id.* As our Supreme Court stated in *Consumer Party,* "[w]hile it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction on our part to deliberately ignore a *clear constitutional violation.*" *Id.* at 178, 507 A.2d at 333 (emphasis added). The court went on to state:

> [W]e must not inquire into every allegation of procedural impropriety in the passage of legislation. However, where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, and if warranted a judicial remedy, we are mandated to do no less.

*Id.* at 180, 507 A.2d at 334.

In *League of Women Voters of Pennsylvania v. Commonwealth,* 692 A.2d 263 (Pa. Cmwlth.1997), the validity of the General Appropriations Act of 1996 (Act 1A) was challenged on the basis that the General Assembly in enacting Act 1A allegedly violated mandatory provisions of the Pennsylvania Constitution because a Committee of Conference purported to introduce changes to individual line item appropriations that went beyond the scope of disagreement between the two chambers of the General Assembly. In addition, it was alleged that the compiling of a report by the Conference Committee prior to its first public meeting violated the Sunshine Act.[13] This court, however, concluded that judicial scrutiny of those constitutional and statutory claims was barred by the Enrolled Bill Doctrine because the case did not present "*clear violations* of mandatory provisions of the Pennsylvania Constitution which would warrant this court's judicial intervention in the legislative process." *League of*

---

12. An "enrolled bill" is one which has been: (1) certified by the Speaker of the House and the presiding officer of the Senate as having passed the General Assembly; (2) signed by the Governor; and (3) filed with the Secretary of the Commonwealth. *League of Women Voters of*

*Pennsylvania v. Commonwealth,* 692 A.2d 263, 270 n. 8 (Pa.Cmwlth.1997).

13. Act of July 3, 1986, P.L. 388, *as amended,* 65 P.S. §§ 271–286.

*Women Voters*, 692 A.2d 263, 271 (Pa. Cmwlth.1997) (emphasis added).

■ Here, the heart of Petitioners' allegations in Count III of the petition for review is that the Governor, in approving Act 105, failed to comply with the proper procedures for proposing a budget in violation of Sections 613 and 619 of the Code. Specifically, Petitioners aver that "the budgetary impact and budgetary requirements implicated by the collective bargaining and interest arbitration provisions contained in Act 105 were: (a) never displayed or justified as a separate line item in any appropriation bill; (b) never displayed or justified as a separate item in any Governor's budget request; (c) never briefed to the Chairmen of the Senate and House Appropriation Committees or the leadership of the General Assembly; and (d) never statistically analyzed by the Governor." (Petition for review at 12–13.) Petitioners then craft what is essentially an asserted violation of statute into an alleged oversight of constitutional dimensions, arguing that by failing to follow the statutory procedure required by the Code for proposing a budget, the Governor has violated his constitutional duties to "take care that the laws be faithfully executed" and to return any bill of which he does not approve to the House in which it originated, duties established by Sections 2 and 15, respectively, of Article 4 of the Pennsylvania Constitution.

Because the alleged statutory violations upon which Petitioners' entire constitutional argument is based are dubious at best, we believe that the issue presented by Petitioners is not one involving the clear violation of a mandatory constitutional provision *so as to warrant judicial scrutiny into the procedures by which Act 105 was enacted.* Commonwealth Respondents argue that the requirements of Sections 613 and 619 of the Code apply only to *programs for which direct appropriations will be sought from the state budget;* they do not apply to the provisions of Act 105 mandating collective bargaining and interest arbitration for school administrators because *no state funding was directly* sought or appropriated to implement those provisions, and the District itself only receives state funds indirectly in the form of subsidies from the Department of Education. Our review of the relevant provisions of Arti-

cle VI of the Code lends great credence to the Commonwealth Respondents' assertion.

Article VI of the Code is entitled "COMMONWEALTH BUDGET PROCEDURES." Section 613 thereof, relied upon by Petitioners, sets forth the materials and information which the Governor is required to submit to the General Assembly in order to receive approval for the state budget. This section requires the Governor to submit to the General Assembly a balanced operating budget for the ensuing fiscal year setting forth, *inter alia*, the amounts recommended by him to be appropriated to each of the three branches of state government "and the several administrative departments, boards, and commissions of the State government, and to institutions within the State, and for all public purposes, classified by department or agency and by program." 71 P.S. § 233(1)(i). In addition, Section 613 requires the Governor to submit to the General Assembly a program and financial plan for the current budget year and the prior, current and four succeeding fiscal years, which includes, *inter alia*, the actual or estimated operating expenditures classified by department or agency and by program and the clearly stated purposes of each existing program and for each recommended new or revised program. 71 P.S. § 233(3). Finally, Section 613(3) provides as follows:

> (vi) When the Secretary of the Budget identifies a new or expanded program by criteria used in the budget instructions, the new or expanded program shall be displayed and justified as a separate item in the Governor's budget request. A new program shall not be considered to be enacted by the General Assembly in its first year unless it is specifically referred to or displayed as a line item in an appropriation bill.

71 P.S. § 233(3)(vi).

Petitioners assert that the Governor violated Section 613 because the provisions of Act 105 mandating collective bargaining and binding arbitration for school administrators in cities of the first class constitute a "new program," which was required to be justified as a separate item in the Governor's budget request. Petitioners claim that, because Act

105 was not displayed as a line item in an appropriation bill, it could not have been considered to be enacted by the General Assembly. However, in Count I of the petition for review where Petitioners allege that the provisions of Act 105 constitute an unfunded mandate to engage in collective bargaining and interest arbitration, they concede that no funding was sought and no appropriations were requested for the administration of this "program." Petitioners, therefore, necessarily argue that the language of Section 613 is not limited only to those "programs" for which state funding is sought, but applies to all new plans or policies which are sought to be instituted by statute.

By accepting Petitioners' argument, we would require every new "program" or "policy" instituted by statute to be included as a separate item in the Governor's budget request and displayed as a line item in an appropriation bill in order to be valid, even when no appropriations are sought for the implementation of that statutory program. Aside from leading to an absurd result by requiring that the Governor's budget request include programs for which no money is requested from the budget and include programs as a line item in an appropriations bill when no funds are sought to be appropriated, Petitioners' argument is strongly undermined by the language of Section 610 of the Code. That section sets forth the procedures which the Secretary of the Budget must follow in order to procure all of the necessary budget information that the Governor must later submit to the General Assembly under Section 613 of the Code. Section 610 requires the Secretary of the Budget to distribute "instructions and blanks necessary to the preparation of the budget requests" to, *inter alia*, "all institutions or other agencies *which desire State appropriations to be made to them.*" 71 P.S. § 230(a) (emphasis added). Section 610 further provides that "[s]uch blanks shall be in such form as shall be

prescribed by the secretary, to procure any or all information pertaining to the purposes of all *programs to be funded in the budget.*" *Id.* (emphasis added). Therefore, Petitioners' argument that the procedures required by Section 613 of the Code apply to programs for which no state funding is sought, such as the collective bargaining and arbitration provisions of Act 105, is illogical and tenuous, at best.[14]

Because it is highly doubtful that the Governor, in signing Act 105, ran afoul of any of the procedures for budget approval set forth in Sections 613 and 619 of the Code, Petitioners' constitutional argument, which is based entirely on the asserted statutory violation, is insufficient to overcome the Enrolled Bill Doctrine, which requires judicial restraint when the procedures by which a bill was enacted are challenged.

Petitioners here failed to raise an issue involving the *clear violation* of a mandatory constitutional provision so as to warrant judicial scrutiny into the procedures by which Act 105 was enacted. *See League of Women Voters,* 692 A.2d at 271-73. Thus, we cannot say that the Governor clearly violated his duties under the constitution by signing Act 105 into law. To conclude otherwise would mean that any asserted violation of statute would be sufficient to overcome the Enrolled Bill Doctrine as it applies to the Governor under the guise that he failed in his constitutional duty to faithfully execute the laws of the Commonwealth.

We point out that Senate Bill No. 1251, which later became Act 105, was passed by both the Senate and the House of Representatives and was signed into law by Governor Ridge on July 11, 1996. We therefore conclude that the claims asserted by Petitioners in Count III of their petition for review are non-justiciable under the Enrolled Bill Doctrine.[15]

Accordingly, we overrule CASA's preliminary objections with respect to standing and

---

14. Equally tenuous is Petitioners' assertion that the Governor was required to brief the legislative leaders on the *unfunded* requirements of Act 105 as part of the transmission of budget information under Section 619 of the Code as that section requires the Governor "to brief the legislative leadership on issues he can foresee as being *imminent in the budget* for the next fiscal year

and exchange views with them on *issues on the budget* before it is formally submitted to the General Assembly." 71 P.S. § 239(a) (emphasis added).

15. In light of our conclusion that the claims in Count III of the petition for review are not reviewable under the Enrolled Bill Doctrine, we

sustain the preliminary objections of CASA and the Commonwealth Respondents as to subject matter jurisdiction with respect to Counts I, II, IV and V of the petition for review. We sustain the preliminary objections filed by Commonwealth Respondents with respect to Count III of the petition for review on the grounds that the claims asserted therein are non-justiciable. Accordingly, Count III of the petition for review is dismissed with prejudice.

### ORDER

AND NOW, this 2nd day of July, 1997, it is hereby ordered:

1. The preliminary objections filed by respondent Commonwealth Association of School Administrators to the petition for review in the nature of a bill in equity are overruled with respect to the issue of standing and are sustained with respect to the issue of subject matter jurisdiction as to Counts I, II, IV and V of the petition for review.

2. The preliminary objections filed by the Commonwealth, Governor Thomas Ridge and Secretary of Education Eugene Hickok to the petition for review in the nature of a bill in equity are sustained as to Count III of the petition for review with respect to the issue of justiciability and as to Counts I, II, IV and V with respect to the issue of subject matter jurisdiction.

3. Count III of the petition for review in the nature of a bill in equity is dismissed with prejudice.

4. The Commonwealth, Governor Thomas Ridge and Secretary of Education Eugene Hickok are dismissed from this action, and the remaining Counts in the petition for review are transferred to the Court of Common Pleas of Philadelphia County pursuant to Section 5103(a) of the Judicial Code, 42 Pa. C.S. § 5103(a), and Pa. R.C.P. No. 213(f).

Jurisdiction relinquished.

need not address the Commonwealth Respondents' remaining arguments with respect to