# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Stedman, in his Official Capacity : 
as Lancaster County District : 
Attorney, : 
              Petitioner : 
               :   No.  146 M.D. 2019
              v. : 
               :   Argued: September 11, 2019
Lancaster County Board of : 
Commissioners; Joshua Parsons, in his : 
Official Capacity as Chairman of the : 
Lancaster County Board of : 
Commissioners; Dennis Stuckey, in his : 
Official Capacity as Vice-Chairman : 
of the Lancaster County Board of : 
Commissioners; Craig Lehman, in his : 
Official Capacity as Lancaster County : 
Commissioner, : 
              Respondents : 
               : 
Joshua Shapiro, in his Official Capacity : 
as Pennsylvania Attorney General; and : 
Brian Hurter, in his Official Capacity as : 
Lancaster County Controller, : 
              Non-adverse Respondents : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE McCULLOUGH                  FILED:  November 20, 2019

In our original jurisdiction, Craig Stedman, in his official capacity as the District Attorney of Lancaster County (Stedman), filed a petition for review (PFR) on March 13, 2019, and later an amended PFR on April 8, 2019, in the nature of a

complaint seeking declaratory and injunctive relief. In the PFR, Stedman named as respondents the Lancaster County Board of Commissioners (County Commissioners), and Joshua Parsons (Parsons), Dennis Stuckey (Stuckey), and Craig Lehman (Lehman), in their official capacities as Chairman of the Board, Vice-Chairman of the Board, and Commissioner, respectively, (collectively, the Commissioners).[1] Stedman also named as respondents Joshua Shapiro and Brian Hurter, in their official capacities as the Attorney General of Pennsylvania (Attorney General) and the Controller of Lancaster County (Controller), respectively. With respect to the Attorney General and Controller, Stedman originally named them as "Nominal/Non-adverse" respondents and then, in the amended PFR, as "Indispensable/Non-adverse" respondents.

The Commissioners have filed preliminary objections, asserting that we lack subject matter jurisdiction over the claims raised by Stedman; that Stedman has failed to state a claim upon which relief can be granted; and/or that his claims present a non-justiciable controversy. The dispositive issue is whether the Attorney General is an indispensable party to this matter and thus, whether we possess original subject matter jurisdiction to entertain the suit and claims filed by Stedman. We conclude that we lack subject matter jurisdiction.

## I. Background

Broadly speaking, Stedman's amended PFR, filed on April 8, 2019, alleges that the Commissioners and its individual members are attempting to inhibit his use of funds exclusively committed to his control; interfere with his rights to control human resource matters within his office; and threaten, "intimidate," and

---

[1] The Commissioners are the official body responsible for the transaction of business in Lancaster County. (PFR ¶ 10.)

2

"silence him" in order to prevent him from challenging the Commissioners' power and authority. (PFR ¶¶1-4.)

In general, Stedman's claims involve his authority under current section 5803 of what is commonly referred to as the Forfeiture Act, 42 Pa.C.S. §5803.[2,3]

_____

[2] The Forfeiture Act, previously referred to as the Controlled Substances Forfeiture Act, *formerly* 42 Pa.C.S. §§6801-6802, was repealed by the Act of June 29, 2017, P.L. 247 approved June 29, 2017, and effective as of July 1, 2017. The current version of the Forfeiture Act can be considered as instituting reform of the civil asset forfeiture procedures in the Commonwealth and is presently located at sections 5801 through 5808 of the Judicial Code, 42 Pa.C.S. §§5801-5808.

[3] The provisions or subsections of section 5803 of the Forfeiture Act that are relevant to Stedman's claims are reproduced, in pertinent part, as follows:

> Asset forfeiture.
>
> . . .
>
> (f) Use of property held in custody.**--** *When property is forfeited under this chapter, the property shall be transferred to the custody of the district attorney*, *if the law enforcement authority seizing the property has local or county jurisdiction*, or the Attorney General, if the law enforcement authority seizing the property has Statewide jurisdiction. The district attorney or the Attorney General, where appropriate, may:
>
>> (1) retain the property for official use; or
>> (2) sell any forfeited property which is not required to be destroyed by law and which is not harmful to the public, except that the proceeds from the sale shall be used to pay all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising and court costs. The balance of the proceeds shall be used and distributed in accordance with this chapter.
>
> . . .
>
> (g) Use of cash or proceeds of property.**--** *Cash or proceeds of property*, subject to forfeiture under section 5802 *and transferred to the custody of the district attorney under subsection (f) shall be placed in the operating fund of the county in which the district attorney is elected.* The appropriate county authority shall

**(Footnote continued on next page…)**

3

(continued…)

immediately release from the operating fund, without restriction, a like amount for the use of the district attorney for the enforcement of or prevention of a violation of the provisions of The Controlled Substance, Drug, Device and Cosmetic Act. The funds shall be maintained in an account or accounts separate from other revenues of the office. The entity having budgetary control shall not anticipate future forfeitures or proceeds from future forfeitures in adoption and approval of the budget for the district attorney.

. . .

(i) Authorization to utilize property.**--** *Cash or proceeds of property subject to forfeiture under section 5802 and transferred to the custody of the district attorney* or Attorney General under subsection (f) *shall be utilized by the district attorney* or Attorney General for the enforcement of or prevention of a violation of the provisions of The Controlled Substance, Drug, Device and Cosmetic Act. In appropriate cases, the district attorney and the Attorney General may designate proceeds from the forfeited property to be utilized by community-based drug and crime-fighting programs and for relocation and protection of witnesses in criminal cases. Real property may be transferred to a nonprofit organization to alleviate blight resulting from violations of The Controlled Substance, Drug, Device and Cosmetic Act.

(j) Annual audit of forfeited property.**--** *Every county in this Commonwealth shall provide, through the controller, board of auditors or other appropriate auditor and the district attorney, an annual audit of all forfeited property and proceeds obtained under this chapter. The audit shall not be made public but shall be submitted to the Office of Attorney General.* By September 30 of each year, *the county shall report all forfeited property and proceeds obtained under this chapter and the disposition of the property during the preceding year to the Attorney General.* The Attorney General and *each district attorney shall maintain and create appropriate records to account for the property forfeited in a fiscal year and the use made of the property forfeited. Each audit shall include*:

    (1) Date property was seized.
    (2) The type of property seized.
    (3) Where property was seized.

**(Footnote continued on next page…)**

Quoting section 5803(g) of the Forfeiture Act, Stedman avers that "cash or proceeds of property subject to forfeiture under the law are now 'transferred to the custody of the district attorney' and 'shall be placed in the operating fund of the county in which the district attorney is elected,'" in accordance with section 5803(g) of the Forfeiture Act. (PFR ¶19) (quoting 42 Pa.C.S. §5803(g)). Stedman further alleges that, in accordance with section 5803(g) of the Forfeiture Act, "the appropriate county authority" should release without restriction an amount for his use as District Attorney "for enforcement of or prevention of the provisions of The Controlled

---

**(continued…)**

(4) The approximate value.
(5) The alleged criminal behavior with which the property is associated.
(6) The disposition or use of property forfeited.
(7) Whether the forfeiture was related to a criminal case and the outcome of the criminal case.
(8) Date of forfeiture decision.

(k) Annual report and confidential information.**--*The Attorney General shall annually submit a report to the Appropriations Committee and Judiciary Committee of the Senate and to the Appropriations Committee and Judiciary Committee of the House of Representatives* specifying the forfeited property or proceeds of the forfeited property obtained under this chapter during the fiscal year beginning July 1, and the following shall apply:

(1) The report shall include all information required under subsection (j) subject to the limitations provided under paragraph (2).
(2) *The Attorney General shall adopt procedures and guidelines, which shall be public, governing the release of information by the Attorney General or the district attorney to protect the confidentiality of forfeited property or proceeds used in ongoing law enforcement activities*.

42 Pa.C.S. §5803(f), (g), (i)-(k) (emphasis added).

Substance, Drug, Device and Cosmetic Act.[4]"  (PFR ¶20) (quoting 42 Pa.C.S. §5803(g)).  Stedman alleges that he has sole control over the funds obtained through forfeiture subject to two layers of oversight as mandated by the Forfeiture Act.  (PFR ¶24.)  According to Stedman, the first is that Hurter, the Controller, must perform an annual audit of all property and proceeds obtained and used by him as the District Attorney as required by section 5803(j) of the Forfeiture Act, 42 Pa.C.S. §5803(j). (PFR ¶25.)  The second, and more important layer of oversight for our purposes, is the alleged role and extent of involvement of the Attorney General in reviewing the Controller's audit.  In this regard, Stedman avers that the Attorney General is tasked by section 5803(k) of the Forfeiture Act, 42 Pa.C.S. §5803(k), to adopt reporting procedures and guidelines for district attorneys to be used in auditing and reporting the forfeiture assets and with creating and submitting an annual report to the Appropriations and Judiciary Committees of the Pennsylvania House and Senate. Stedman alleges that the procedures and guidelines developed by the Attorney General, set forth at section 5803(k)(2) of the Forfeiture Act, are specifically designed and intended "to protect the confidentiality of forfeited property or proceeds used in ongoing law enforcement activities."  (PFR ¶28) (quoting 42 Pa.C.S. §5803(k)(2)).

Against this statutory background, Stedman alleges the following facts in support of his claims.  He notes that he is currently in possession of forfeited funds and used a portion of them to lease a 2016 Toyota Highlander, which has been used by Stedman and members of the District Attorney's office as an "official vehicle." (PFR ¶29-31.)  Stedman alleges that, prior to leasing the vehicle, he followed the well-established practice for the use of funds obtained through the Forfeiture Act, (PFR ¶32), and that he requested and received a certification from the Controller

---

[4] Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§780-101 – 780-144.

authorizing him to "lease and/or finance" the vehicle. (PFR ¶33; Exhibit A.) He avers that the Commissioners insisted that the lease agreement should have been subjected to their authority to approve contracts as prescribed in the Code of Lancaster County (Lancaster Code). (PFR ¶36.) Stedman contends that the contracting provisions of the Lancaster Code do not apply to forfeiture expenditures and maintains that the Commissioners' approval, per the provisions of the Lancaster Code, does not apply to expenditures incurred from funds obtained through the Forfeiture Act. (PFR ¶¶36, 39.) Stedman asserts that, instead, the Commissioners' sole involvement with the forfeiture funds is their collection, deposit into an account, and then immediate transfer to him as the District Attorney. (PFR ¶40.) Stedman alleges that, after the Commissioners transfer the funds to him, any investigation conducted by the Commissioners is actually an unlawful "audit" under the Forfeiture Act. More specifically, Stedman contends that such an "audit" usurps the statutory authority of the Controller and Attorney General under section 5803(j) and risks violating the confidentiality provisions at section 5803(j) and (k)(2). (PFR ¶¶44-46.)

Stedman asserts that he brought these issues and concerns to the attention of the Commissioners through three letters that he sent on March 5 and 7 of 2019, respectively, requesting that the Commissioners "cease and desist [their] unlawful oversight." (PFR ¶¶47-48.) However, Stedman states that the Commissioners have maintained that they have the authority to review and/or audit his use of funds obtained by virtue of the Forfeiture Act as part of the procurement process in the Lancaster Code. (PFR ¶49.)

Stedman also proffers facts to support his claim that he characterizes as "Employment disputes." (PFR ¶17.) Stedman avers that section 1420(a) of The

7

County Code[5] empowers him as district attorney to "appoint such number of assistants, licensed to practice law in this Commonwealth, to assist in the discharge of duties," 16 P.S. §1420. (PFR ¶57.) Further, he avers that section 1620 of the County Code, 16 P.S. §1620, precludes the Commissioners from interfering with the hiring, discharging or supervision of such employees. (PFR ¶58.) Stedman asserts that after he suspended, with pay, and later reinstated an Assistant District Attorney in February 2019, the Commissioners conducted an investigation into his decisions. (PFR ¶¶59 – 61.) Stedman advised the Commissioners via letter that they lacked the authority to take this action, and the Commissioners allegedly responded by issuing a public statement containing confidential information. (PFR ¶¶62-64.) Stedman maintains that the Commissioners' investigation into matters that belong in his exclusive authority is unlawful as he is an "independent constitutional officer" not subject to review by the Commissioners. (PFR ¶68.)

Stedman next avers that a "legal expense approval dispute" occurred between him and the Commissioners. According to Stedman, the Commissioners attempted to "intimidate and silence him by seeking to defund his attempts to defend himself against their illegal and unlawful encroachments." (PFR ¶70.) More specifically, Stedman alleges that on March 27, 2019, the Commissioners advised the Controller that they would not approve payment of any expenditures that Stedman incurred as a result of this lawsuit, including litigation costs and attorney's fees, challenging the Commissioners' authority. (PFR ¶¶81-82.) Stedman asserts that under the doctrine of separation of powers, he is entitled to recover the above expenditures and the Commissioners cannot retaliate against him for filing suit to vindicate his authority as District Attorney. (PFR ¶¶76-77.) He alleges that the

_____

[5] The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§101—3000.3903.

8

Commissioners have already budgeted and appropriated funds for legal fees and expenses for him to use as District Attorney and that, because the funds have already been appropriated, the Commissioners cannot retroactively cancel or "defund" the appropriation. (PFR ¶¶79-80.) Stedman contends that, in this aspect, the Commissioners have violated "the Pennsylvania Constitution and basic separation of powers principles." (PFR ¶89.)

Based on the foregoing allegations, Stedman asserts that he is entitled to relief in three separate counts. First, in Count I, which Stedman asserts against all the Respondents, including the Attorney General, Stedman pleads a claim for declaratory relief under the Declaratory Judgments Act.[6] Specifically, he seeks an order declaring that (1) only the Controller or Attorney General has the authority to audit or investigate the use of Forfeiture Act funds; (2) the Commissioners cannot audit or investigate his use of Forfeiture Act funds; and (3) the contracting procedures under The County Code do not apply to Stedman's expenditure of Forfeiture Act funds. He also requests that this Court (1) permanently enjoin the Commissioners and the named members of the County Commissioners from auditing or investigating him; (2) award attorney's fees and costs; and (3) grant further relief as deemed just and proper. (PFR ¶¶90-98.)

In Count II, Stedman seeks declaratory relief against the County Commissioners and Parsons, Stuckey, and Lehman in their official capacities. Stedman requests an order decreeing that his employment decisions are not subject to review by these Respondents and that they cannot investigate him. He also requests that we permanently enjoin the County Commissioners and Parsons, Stuckey, and Lehman, individually and in their official capacities, from reviewing or investigating

---

[6] 42 Pa.C.S. §§7531 – 7541.

9

his employment decisions. Further, Stedman seeks an award of attorney's fees and costs and other relief as may be deemed proper. (PFR ¶¶99-106.)

Finally, in Count III, Stedman seeks relief against the Commissioners and the Controller under the Declaratory Judgments Act. In this claim, Stedman asks that this Court declare that (1) he is entitled to payment of his attorney's fees and costs incurred as a result of this litigation pursuant to basic "separation of powers," (2) he is entitled to payment of his attorney's fees and costs incurred as a result of this litigation because the payments derive from funds that were already budgeted and appropriated by the Commissioners, and (3) the payment of such costs and fees do not require the approval of either the Commissioners or the Controller. Stedman also requests that we permanently enjoin the Commissioners and the Controller from refusing to approve these costs and fees, award him attorney's fees and costs, and assess other relief as we deem just and proper. (PFR ¶¶107-115; pp. 33-34)

Significantly, Stedman alleges that this Court has original jurisdiction over the claims in Count I of the PFR under section 761(a)(1) of the Judicial Code, 42 Pa.C.S. §761(a)(1), and ancillary jurisdiction over Counts II and III because they are related to Count I. (PFR ¶¶7-8.) Stedman avers that Joshua Shapiro, as Attorney General, is an indispensable party to Count I of the action because resolution of this claim could have an impact on his authority under the Forfeiture Act. (PFR ¶16.)

On the same date that he filed the amended PFR, Stedman filed an application for relief, requesting that summary relief be granted on Counts I through III of the amended PFR.

On May 7, 2019, the County Commissioners and Parsons, Stuckey, and Lehman in their official capacities filed preliminary objections to the amended PFR. In these preliminary objections, the above Respondents assert that this Court lacks original jurisdiction over the case; that Stedman fails to state a claim upon which

relief can be granted; and that the case should be dismissed for presenting a non-justiciable controversy.[7]

On May 9, 2019, the Controller filed an answer to the amended PFR. On June 7, 2019, the Attorney General filed an answer and new matter to the amended PFR. In this filing, the Attorney General alleges that he should "have the opportunity to be heard" to the extent that this Court's decision could "directly impact the statutory role of the Attorney General" under the Forfeiture Act. (Attorney General's Answer, 6/7/2018, at 2.) Otherwise, with respect to the averments in the amended PFR that involve or pertain to the Attorney General, the Attorney General either asserts a general denial or states that the averment is a conclusion of law to which no response is necessary. Subsequently, the parties filed briefs in support and opposition to the preliminary objections and Stedman's application for summary relief.

## II. Discussion

We begin with the Commissioners' preliminary objections asserting that (1) this Court lacks subject matter jurisdiction over all claims in the PFR, (2) the PFR fails to plead a justiciable case or controversy, and (3) Stedman has failed to state a legally sufficient claim.

In support of their argument that we lack subject matter jurisdiction, the Commissioners first assert that as a "political subdivision" they are not included within the definition of "Commonwealth government" or an "officer" of the Commonwealth government, as required to invoke this Court's original jurisdiction

---

[7] On May 8, 2019, Stedman filed a second application for summary relief requesting that this Court deem the preliminary objections of the Commissioners and their individual members as a cross-application for summary relief and also for expedited briefing. After Respondents filed answers to this application, this Court entered an order on May 21, 2019, denying Stedman's application but granting Stedman's request for expedited briefing. Particularly, this Court ordered briefing on the preliminary objections and Stedman's original application for summary relief.

under section 761(a)(1) of the Judicial Code, 42 Pa.C.S. §761(a)(1). Additionally, the Commissioners argue that merely naming the Attorney General as a party in Count I is insufficient to confer this Court with original jurisdiction. The Commissioners contend that the Attorney General is not an indispensable party to the present matter and point out that Stedman is not seeking any relief against the Attorney General. The Commissioners posit that because this Court does not have subject matter jurisdiction over Count I, we lack ancillary jurisdiction over Counts II or III under section 761(c) of the Judicial Code.

In opposition, Stedman argues that this Court possesses subject matter and original jurisdiction over Count I. Stedman asserts that the Attorney General is an indispensable party under Count I because he requested a declaration that will adjudicate rights and responsibilities that will have an impact on the statutory role of the Attorney General under the Forfeiture Act. Stedman further asserts that disposition of Count I could enhance or erode the Attorney General's rights, and implicate the Attorney General's obligations and duties, under the Forfeiture Act. In this vein, Stedman asserts that we possess ancillary jurisdiction over Counts II and III because they are sufficiently related to Count I.

## A. Standard of Review

In reviewing preliminary objections, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. *Vattimo v. Lower Bucks Hospital, Inc.*, 465 A.2d 1231, 1232 (Pa. 1983); *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 914 A.2d 477, 479 n.2 (Pa. Cmwlth. 2007), *aff'd*, 985 A.2d 678 (Pa. 2009). However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Portalatin v. Department of Corrections*, 979 A.2d 944, 947 (Pa. Cmwlth. 2009). "Preliminary objections should

12

be sustained only in cases that are clear and free from doubt." *Pennsylvania AFL-CIO v. Commonwealth*, 757 A.2d 917, 920 (Pa. 2000).

## B. Lack of Subject Matter Jurisdiction

We begin with the undisputed basic principle that this Court, as any other court, must have subject matter jurisdiction over a controversy because, without it, any judgment rendered would be void. *Patterson v. Shelton*, 175 A.3d 442, 449 (Pa. Cmwlth. 2017) (citations omitted). Thus, "whenever a court discovers that it lacks jurisdiction over the subject matter or a cause of action, it is compelled to dismiss the matter under all circumstances." *Hughes v. Pennsylvania State Police*, 619 A.2d 390, 393 (Pa. Cmwlth. 1992).

> Jurisdiction over the subject matter is conferred solely by the Constitution and laws of the Commonwealth. The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary. Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*.

*Commonwealth v. Locust Township*, 968 A.2d 1263, 1268-69 (Pa. 2009).

Pertinent here, section 761(a)(1) of the Judicial Code states that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings . . . [a]gainst the *Commonwealth government*, including any *officer* thereof, acting in his official capacity." 42 Pa.C.S. §761(a)(1) (emphasis added).[8] In

---

[8] In its entirety, section 761(a)(1) provides:

**(Footnote continued on next page…)**

section 102 of the Judicial Code, the term "Commonwealth government" is defined as follows:

> "Commonwealth government." The government of the Commonwealth, including the courts and other officers or agencies of the unified judicial system, the General Assembly and its officers and agencies, the Governor, and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth, but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or local authority.

42 Pa.C.S. §102.

---

**(continued…)**

> (a) General rule.--The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>> (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:
>>> (i) actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court;
>>> (ii) eminent domain proceedings;
>>> (iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);
>>> (iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act;[] and
>>> (v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

42 Pa.C.S. §761(a)(1).

The parties do not dispute that this language excludes Commissioners from being construed as part of the "Commonwealth government" or any "officer" of the "Commonwealth government." However, while the Attorney General is an "officer" of the Commonwealth, this alone is not sufficient to establish jurisdiction. As we have held, "[t]he mere naming, however, of the Commonwealth or its officers in an action does not conclusively establish this [C]ourt's jurisdiction, and the joinder of such parties when they are only tangentially involved is improper." *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators, Teamsters Local 502*, 696 A.2d 859, 867 (Pa. Cmwlth. 1997) (*PSBA*), *appeal dismissed*, 704 A.2d 631 (Pa. 1998). Instead, for this Court to have original jurisdiction over a suit against the Commonwealth and another, non-Commonwealth party, the Commonwealth or one of its officers must be an indispensable party to the action. *See Ballroom, LLC v. Commonwealth*, 984 A.2d 582, 588 (Pa. Cmwlth. 2009); *Piper Aircraft Corporation v. Insurance Company of North America*, 417 A.2d 283, 285 (Pa. Cmwlth. 1980).

A party is indispensable when "his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *Rachel Carson Trails Conservancy, Inc. v. Department of Conservation and Natural Resources of the Commonwealth*, 201 A.3d 273, 279 (Pa. Cmwlth. 2018) (citing *HYK Construction Company, Inc. v. Smithfield Township*, 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010)).[9] "Thus, the main inquiry for determining whether a party is indispensable involves whether justice can be accomplished in the absence of the party." *Id.*

---

[9] *See also Ballroom*, 984 A.2d at 558 ("In general, an indispensable party is one whose interests are so connected with the litigant's claim that no relief can be granted without infringing upon that party's rights. A Commonwealth party may be declared an indispensable party when meaningful relief cannot conceivably be afforded without the Commonwealth party's direct involvement in the action.") (citations omitted).

15

Significantly, "where a petitioner 'seeks absolutely no relief' from the Commonwealth party, and the Commonwealth party's involvement is only 'minimal,' we have held that it is not an indispensable party." *Rachel Carson Trails Conservancy*, 201 A.3d at 280 (quoting *Perkasie Borough Authority v. Hilltown Township Water and Sewer Authority*, 819 A.2d 597, 602 (Pa. Cmwlth. 2003)).

While the Attorney General has a general duty to uphold the laws of this Commonwealth, this fact, standing alone, is insufficient to render him a proper respondent in this action. *See Wagaman v. Attorney General of the Commonwealth of Pennsylvania*, 872 A.2d 244, 246-47 (Pa. Cmwlth. 2005). In order for the Attorney General to be an indispensable party, the statute at issue "must give him powers or duties with respect to the law's enforcement or administration." *Id.* at 247. "In other words, in order to bring suit against the Attorney General, the Attorney General must be the official who is charged with the enforcement and administration of [the statute at issue]." *Id.* However, at the same time, the role of the Attorney General in the disputed provisions of the statutory scheme must be more than "minimal" or merely "ministerial" in nature. *See Rachel Carson Trails Conservancy*, 201 A.3d at 280; *Perkasie Borough Authority*, 819 A.2d at 600, 602 (holding that in dispute involving agreement between township and water authority, the Pennsylvania Department of Environmental Protection was not an indispensable party where there was no claim raised against it and its involvement in implementation of agreement was "minimal"); *see also E-Z Parks, Inc. v. Philadelphia Parking Authority*, 521 A.2d 71, 74 (Pa. Cmwlth. 1987) (holding that "the Commonwealth need not be joined as an indispensable party where its interests or rights are only tangentially involved in the litigation").

Here, the Attorney General is not an indispensable party to the instant action. The amended PFR reflects that the sole request for relief against the Attorney General comes in Count I, requesting that we "declare that only [the Controller] and

16

[the] Attorney General [] have authority under the [Forfeiture Act] to audit or investigate [Stedman's] use of [Forfeiture Act] funds." (PFR ¶98a.) Besides this request for relief, the only material allegation in the amended PFR that pertains relevantly to the Attorney General is located in paragraph 46. This averment alleges that the Commissioners' "audit is impermissible because it (1) usurps authority that is only held, by statute, by the Controller and the Attorney General, *see* 42 Pa.C.S. §5803(j); and (2) seriously risks a violation of the express confidentiality provisions in Section 5803 concerning forfeiture proceeds. *See* 42 Pa.C.S. §5803(j), (k)(2)." (PFR ¶46.)

However, by its very terms, section 5803(j) mandates that a "**county,**" through its "controller, board of auditors or other appropriate auditor and the district attorney," **must create an "annual audit of all forfeited property and proceeds," which "shall be *submitted* to the Office of the Attorney General.**" 42 Pa.C.S. §5803(j) (emphasis added). In addition, the **county "shall report** all forfeited property and proceeds . . . and the disposition of the property . . . to the Attorney General." *Id.* (emphasis added). This language makes clear that it is the county, and not the Attorney General, that is charged with creating the audit of and reporting all forfeited property and proceeds. Hence, we cannot agree with Stedman's assertion that the Attorney General has the authority under the Forfeiture Act, 42 Pa.C.S. §5803(j), to audit or investigate the use of forfeiture funds.

Based upon this statutory provision, we can discern no power granted by the General Assembly to the Attorney General under the Forfeiture Act that would permit the Attorney General to conduct an "audit" of the county's annual report let alone an audit under the circumstances alleged in this case. In our view, the Commissioners have correctly characterized the Attorney General as "merely the recipient" of the county's annual audit. (Commissioners' Brief at 13-14.) The Attorney General, by virtue of the statutory language is not an active participant in

17

the auditing process itself, or the creation of the county's annual audit of its use of Forfeiture Act funds. The Forfeiture Act also does not grant the Attorney General the enforcement authority to review or otherwise assess the propriety of the substantive content of and/or the accounting/procedural process used to create the county's annual audit. Nor does the Forfeiture Act charge the Attorney General with the responsibility to oversee the relationship between the District Attorney and the county officials when creating the audit and to commence suit when there is a dispute among them regarding their statutory roles and constitutional authority to ensure that the separation of powers are maintained. Further, as previously mentioned, although the Attorney General has a general duty to uphold the law, in this case the Forfeiture Act is simply not enough to vest this Court with original jurisdiction. *See Wagaman*, 872 A.2d at 246-47.

Nonetheless, Stedman asserts that the Attorney Generally essentially "implements" the Forfeiture Act because, pursuant to section 5803(k), he is required to prepare and "annually submit a report to" certain enumerated Committees of the General Assembly. 42 Pa.C.S. §5803(k). Stedman also points out that under section 5803(k)(2), the Attorney General is obligated to "adopt procedures and guidelines, which shall be public, governing the release of information by the Attorney General or the district attorney to protect the confidentiality of forfeited property or proceeds used in ongoing law enforcement activities." 42 Pa.C.S. §5803(k)(2).

However, given the nature of Stedman's claims, the Attorney General's duties in the above-mentioned regards are not implicated in the issue squarely before this Court. To recapitulate, Stedman seeks declarations that his use of Forfeiture Act funds is not subject to review or oversight by the Commissioners (Count I), that his employment actions are not subject to review or oversight by the Commissioners (Count II), and that he is constitutionally and statutorily entitled to payment of his attorney's fees and legal costs incurred as a result of this litigation (Count III).

18

Consequently, all three counts listed in the amended PFR involve what the Commissioners appropriately refer to as "a purely local, political feud among Lancaster County government officials." (Commissioners' Brief at 2.) In the specific and unique context of the claims asserted by Stedman and their supporting factual allegations, the Attorney General's adoption of procedures and guidelines to protect the confidentiality of information under the Forfeiture Act is not at issue; that is, any alleged "risk" or harm to confidentiality is too tenuous and speculative to be deemed plausible. In short, there are no allegations in the amended PFR that concern the confidentiality of the reports generated by the Attorney General under the Forfeiture Act and, assuming Stedman's claims are meritorious, a court could afford him meaningful relief without the Attorney General's involvement in the action.

Moreover, in light of the gist of Stedman's claims, the fact that the Attorney General must prepare and "annually submit a report to" certain enumerated Committees of the General Assembly is a duty that can only be considered as entailing minimal involvement by the Attorney General on a matter that is ministerial in nature. Importantly, there are no averments in the amended PFR that touch upon the role of the Attorney General in submitting a report to the Committees of the General Assembly *after* the county submits a report to the Attorney General. The county also has no statutory basis or authority to challenge the mathematical and/or substantive accuracy of the report created by the Attorney General and submitted to the Committees. *Cf. Dunbar v. Pennsylvania State Police*, 902 A.2d 1002, 1003-05 (Pa. Cmwlth. 2006) (concluding that the Pennsylvania State Police (PSP) was an indispensable party where the Criminal History Record Information Act (CHRIA)[10] provided an individual with a right to "challenge . . . the accuracy and completeness of his criminal history record information" and the PSP was statutorily "responsible

---

[10] 18 Pa. C.S. §§9101-9183.

for the "collection, compilation, maintenance and dissemination of criminal history record information"). Moreover, as stated above, the General Assembly has not vested the Attorney General with a specific enforcement role under the Forfeiture Act with respect to the process and result of the audit that the Controller, the Commissioners, and/or the District Attorney creates.

As we have held, Commonwealth officials "may be proper parties when their authority to implement or enforce a statute is in question or when their own actions are at issue." *Howard v. Commonwealth*, 957 A.2d 332, 335 (Pa. Cmwlth. 2008). Such is not the case here. Based upon the lack of a direct link between the Attorney General and the legal disputes between Stedman, the Controller, and the Commissioners, and the fact that the claims do not involve any of the duties of the Attorney General under the Forfeiture Act, we find our decision in *PSBA* to be instructive and to provide guidance. In that case, school boards and districts (collectively, Schools) challenged what was commonly known as Act 105,[11] which provided for collective bargaining between school administrators employed by school districts in cities of the first class, and sought to declare the statute unconstitutional or that its provisions did not apply to them. Attempting to invoke our original jurisdiction, the Schools named the Secretary of Education as a respondent. In concluding that the nature of the legal dispute was inherently local, being between the Schools and the unions, and that the Secretary was not an indispensable party to the action, this Court stated:

> [The Schools] argue that the Secretary of Education is an indispensable party because "this suit concerns the key issue of collective bargaining with regard to one of the Commonwealth's school districts over which he

---

[11] Act of April 9, 1929, P.L. 177, *as amended*, added by the Act of July 11, 1996, P.L. 619, 71 P.S. §371.

20

oversees[,]" and the declaration sought "in the future could have consequences for the other school districts in the Commonwealth." Such an interest, which is speculative at best, simply is too remote to make the Secretary of Education an indispensable party to this action.

The Secretary of Education has no power or duty to enforce, implement or administer Act 105, the disputed provisions of which affect only the District and its administrators. While Act 105 does require school administrators to notify the Secretary of Education when they are involved in binding interest arbitration under the Act, [] the Act imposes no duty upon the Secretary to act thereon or to enforce any of the provisions of Act 105. Because the Secretary of Education does not claim any interest that would be affected by the declaration sought, and relief can be granted without infringing upon any asserted rights of the Secretary, he is not an indispensable party to the [Schools'] action.

*PSBA*, 696 A.2d at 867-68 (internal citations omitted).

At its core, the alleged legal wrongs in the counts contained in the amended PFR are no different than the nature of the claims in *PSBA*. In both instances, the legal disputes were and are localized and the Commonwealth government official was and is only tangentially involved in the dispute, possessing no power or duty to enforce or administer the statutory provisions that were and are at issue. Quite simply, the statutory provisions that are implicated here, sections of The County Code, and the relevant subparts of section 5803 of the Forfeiture Act, pertain solely to the conduct, duties, and responsibilities of the Commissioners and the Controller, and not the Attorney General. Therefore, given the foregoing, we conclude that the Attorney General's rights are not "so connected with the claims of [Stedman] that no decree can be made without impairing [the Attorney General's] rights." *Rachel Carson Trails Conservancy,* 201 A.3d at 279. Accordingly, we sustain the Commissioners' preliminary objection asserting that this Court lacks original subject matter jurisdiction over the amended PFR.

21

Due to our disposition, we need not address the other preliminary objections of the Commissioners. Lacking original jurisdiction over any claim in this matter, we necessarily do not possess ancillary jurisdiction over any claim in this matter. *See* section 761(c) of the Judicial Code, 42 Pa. C.S. §761(c) (vesting this Court with "ancillary jurisdiction over any claim or other matter which is related to a claim or other matter *otherwise within its exclusive original jurisdiction*" (emphasis added)); *Bowers v. T-Netix*, 837 A.2d 608, 611 (Pa. Cmwlth. 2003) (concluding that where this Court did not "possess original jurisdiction over [the petitioner's] claims seeking review of the actions of the Department, as a Commonwealth agency," this Court "no longer ha[d] a basis for exercising ancillary jurisdiction over [the petitioner's] claims against [non-Commonwealth parties]"). Finally, rather than dismissing Stedman's amended PFR, this Court, under the authority of section 5103(a) of the Judicial Code, 42 Pa.C.S. §5103(a), and Pa.R.A.P. 751, will transfer this matter to the Court of Common Pleas of Lancaster County. *See, e.g.*, *Seitel Data, Ltd. v. Center Township*, 92 A.3d 851, 864 (Pa. Cmwlth. 2014); *E-Z Parks, Inc. v. Larson*, 498 A.2d 1364, 1369 (Pa. Cmwlth. 1985).

_____
PATRICIA A. McCULLOUGH, Judge

Judges Brobson and Fizzano Cannon did not participate in this decision.

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Stedman, in his Official Capacity  :
as Lancaster County District  :
Attorney,  :
            Petitioner  :
  :
            v.  :
  :
Lancaster County Board of  :
Commissioners; Joshua Parsons, in his  :
Official Capacity as Chairman of the  :
Lancaster County Board of  :
Commissioners; Dennis Stuckey, in his  :
Official Capacity as Vice-Chairman  :
of the Lancaster County Board of  :
Commissioners; Craig Lehman, in his  :
Official Capacity as Lancaster County  :
Commissioner,  :
            Respondents  :
  :
Joshua Shapiro, in his Official Capacity  :
as Pennsylvania Attorney General; and  :
Brian Hurter, in his Official Capacity as  :
Lancaster County Controller,  :
            Non-adverse Respondents  :

No.  146 M.D. 2019

## ***ORDER***

AND NOW, this 20th day of November, 2019, the preliminary objection filed by Lancaster County Board of Commissioners, and Joshua Parsons, Dennis Stuckey, and Craig Lehman, in their official capacities, pertaining to lack of subject matter jurisdiction, is SUSTAINED.

Because this Court lacks subject matter jurisdiction over the claims asserted in the amended petition for review, filed by Craig Stedman, in his official capacity as District Attorney of Lancaster County, we TRANSFER the above-

captioned matter to the Court of Common Pleas of Lancaster County. The Prothonotary of this Court shall transmit the record of the above proceedings to the Prothonotary of the Court of Common Pleas of Lancaster County, together with a copy of this opinion and order and a certified copy of docket entries.

_____
PATRICIA A. McCULLOUGH, Judge